UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| MIRIAM D.,[1] <br>     Plaintiff, <br> v. <br> KILOLO KIJAKAZI, <br>     Defendant. | Case No. 22-cv-04685-RMI <br><br> **ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT** <br><br> Re: Dkt. Nos. 11, 20 |

## INTRODUCTION

Plaintiff seeks judicial review of an administrative law judge ("ALJ") decision denying her application for disability employment benefits under Title II of the Social Security Act. *See* Admin. Rec. ("AR") at 15-25.[2] Following the denial of a prior application on March 29, 2019, Plaintiff filed a second application for Title II benefits on June 4, 2019. *Id.* at 63-80, 251-54.[3] Plaintiff's second application (the subject of the present dispute) was denied by an ALJ on August 5, 2021, as was Plaintiff's request for review of that decision by the Appeals Council. *Id.* at 1-3, 15-25. As such, the ALJ's decision is the "final decision" of the Commissioner of Social Security, which this court may review. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Both Parties have consented to the jurisdiction of a magistrate judge (dkts. 7, 8), and both Parties have moved for summary judgment (dkts. 11, 20). Plaintiff has requested that this court remand her case for a calculation of

---

[1] Pursuant to the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States, Plaintiff's name is partially redacted.

[2] The Administrative Record ("AR"), which is independently paginated, has been filed in fifteen attachments to Docket Entry #10. *See* (dkts. 10-1 through 10-15).

[3] While somewhat unclear, it appears that Plaintiff is alleging an onset date of either April 1 or April 9, 2019. *See* AR at 37-38, 253.

1   benefits. Pl.'s Mot. (dkt. 11) at 23. Defendant, acknowledging that the ALJ's decision was not
2   supported by substantial evidence, requests that this court remand the case for further
3   administrative proceedings. Def.'s Mot. (dkt. 20) at 2. For the reasons stated below, Defendant's
4   Motion is **GRANTED**, Plaintiff's Motion is **DENIED**, and the case is remanded for further
5   proceedings consistent with this Order.

## LEGAL STANDARDS

The Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). A district court has a limited scope of review and can only set aside a denial of benefits if it is not supported by substantial evidence or if it is based on legal error. *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). The phrase "substantial evidence" appears throughout administrative law and directs courts in their review of factual findings at the agency level. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1154 (quoting *Consol. Edison Co. v. NRLB*, 205 U.S. 197, 229 (1938)); *see also Sandgathe v. Chater*, 108 F.3d 978, 979 (9th Cir. 1997). "In determining whether the Commissioner's findings are supported by substantial evidence," a district court must review the administrative record as a whole, considering "both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). The Commissioner's conclusion is upheld where evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

## SUMMARY OF THE RELEVANT EVIDENCE

Plaintiff raises two claims, the first of which assigns error to the ALJ's evaluation of Plaintiff's pain and symptom testimony, and the second of which assigns error to the ALJ's evaluation of certain medical opinions. Pl.'s Mot. (dkt. 11) at 14-22. Accordingly, the following is a summary of the evidence relevant to these claims.

### Plaintiff's Pain and Symptom Testimony

At the hearing on June 7, 2021, Plaintiff testified that she worked as a critical care

1 transport nurse for more than ten years before she developed hypertensive crisis, heart palpations,
2 and sleeping difficulties. AR at 39. After consultation with her primary care physician, Plaintiff
3 took a short break from her job. *Id.* Upon returning to work, Plaintiff encountered a situation in
4 which a young boy with severe autism had apparently been abandoned by his parents. *Id.* While
5 transporting the boy, Plaintiff "felt a break happen within" her and proceeded to get into an
6 argument with a new EMT "simply because she was talking." *Id.* at 39-40. Plaintiff was taken off
7 work the next day and has not worked as a critical care nurse since. *Id.* at 40. This episode,
8 Plaintiff testified, was just one of many similar experiences during her time in this job. *Id.*

9 Following her job as a critical care nurse, Plaintiff attempted a brief stint as an infusion
10 nurse. Plaintiff was "incredibly nervous" and "very stressed" that something was going to happen
11 to her patients, however, which resulted in the patients feeling uncomfortable. *Id.* at 41. Plaintiff
12 was fired from this job after a few months, even though the company was owned by a friend
13 whom Plaintiff had met through nursing. *Id.*

14 Plaintiff symptoms apparently worsened after the prior finding of non-disability in March
15 of 2019. *Id.* at 43. Her depression is now "out of control," and sometimes she will not shower for
16 several days because she does not realize how many days have gone by. *Id.* Plaintiff feels as
17 though it is "difficult to be motivated" and to "get out of a negative state of mind and negative
18 mental state." *Id.* at 44. While medications have been helping, these come with certain side
19 effects—such as migraines that occur several times per week and can last several days. *Id.* at 45.

20 In April of 2019, Plaintiff took a trip to El Salvador to visit family. *Id.* at 45. In late-2019
21 or early-2020, Plaintiff attended kickboxing classes for a brief period, but lately has been unable to
22 engage in exercise and typically spends most of the day sitting or in bed. *Id.* at 45-46. The last
23 time Plaintiff went for a walk was roughly three months ago, and she has difficulties shopping
24 alone and only goes about one to two times per month (usually accompanied by her son). *Id.* at 47.
25 Plaintiff is not part of any social groups and does not engage in social activities. *Id.* She also gets
26 panic attacks when she drives, likely due to the automobile-related trauma that she encountered as
27 a critical care nurse. *Id.* at 48. Finally, Plaintiff provided that her recent separation from her
28 husband was attributable to her various conditions. *Id.* at 49.

3

**Medical Opinions**

*Dr. Gupta*

Dr. Gupta saw Plaintiff for a consultative examination at the request of the Social Security Administration. *Id.* at 561. After a well-documented mental status exam and clinical interview, Dr. Gupta's diagnostic impressions were: Major Depressive Disorder; Post-Traumatic Stress Disorder ("PTSD"); and, Generalized Anxiety Disorder. *Id.* at 565. As to Plaintiff's ability to perform in the workplace, Dr. Gupta found that Plaintiff would have severe limitations in her ability to do the following: interact with coworkers and the public; maintain regular attendance in the workplace and complete a normal workday/workweek without interruption; and, deal with the usual stress encountered in the workplace. *Id.* at 656. Dr. Gupta also found that Plaintiff was not impaired in her ability to perform simple, repetitive tasks, and was mildly impaired in her ability to perform detailed and complex tasks, as well as accept instructions from supervisors. The ALJ found Dr. Gupta's opinion unpersuasive, as it was "not consistent with or well-supported by the objective medical evidence." *Id.* at 23.

*Dr. De Hoyos*

Dr. De Hoyos treated and observed Plaintiff since 2016. *Id.* at 359. On May 20, 2021, Dr. De Hoyos filled out a "Mental Residual Functional Capacity Questionnaire," which was to be used to determine Plaintiff's "ability to do work-related activities on a day-to-day basis in a regular work setting." *Id.* at 590. Dr. De Hoyos found that Plaintiff would either be unable to meet competitive standards or had no useful ability to function in most areas of work-related activity. *Id.* at 590-91. Dr. De Hoyos also reviewed the examination performed by Dr. Gupta and agreed with her findings of "severe deficits in areas of interaction with coworkers, difficulty in maintaining attendance[,] and difficulty in dealing with workplace stress." *Id.* at 593. Ultimately, Dr. De Hoyos' diagnostic impressions were: Major Depression; PTSD; and, Anxiety. *Id.* at 590. The ALJ found Dr. De Hoyos' opinion unpersuasive, as it was "not well-supported by his clinical findings or by the other objective medical evidence of record." *Id.* at 23.

*State Agency Psychologists*

The opinions of Dr. Jacobs and Dr. Poma, two non-examining State Agency psychologists,

4

1  were also given consideration by the ALJ. Dr. Jacobs opined that Plaintiff was either not
2  significantly limited or was moderately limited in her performance of sustained work activities. *Id.*
3  at 87-89. Dr. Poma's findings were substantially similar. *Id.* at 101-103. Because these opinions
4  relied on the 2019 decision, however, and because Plaintiff alleges a worsening of her symptoms
5  since that time, the ALJ found these opinions to be only "somewhat persuasive." *Id.* at 23.

## DISCUSSION

The ALJ in the present case appropriately set forth the applicable law regarding the five-step sequential evaluation process. *See id.* at 16-18; 20 C.F.R § 416.920, § 404.1520. Given the limited nature of the current dispute, the court finds that a full explanation of these steps is unnecessary. For purposes of the present dispute, however, it is worth noting that the ALJ found—at step two—that Plaintiff has the following severe impairments: major depressive disorder; PTSD; and, generalized anxiety disorder. AR at 18. The ALJ also assessed Plaintiff as having the Residual Functional Capacity ("RFC") to "perform a full range of work at all exertional levels," but with the following limitations: working in a stable, low stress work environment, requiring only occasional decision making, occasional use of judgment, and few changes in the day-to-day work setting, tools, or processes; working in proximity to coworkers but not on joint or shared tasks; performing work that is done by rote with few changes, little independent judgment, and that is not done rapidly or with a high production quota; performing work requiring occasional contact with others; and, working in a setting that does not require interaction with the public as part of her job duties, but incidental contact is acceptable. *Id.* at 20.

As discussed *supra*, the Parties do not dispute that the ALJ's decision was erroneous. Instead, the only issue is whether the case should be remanded for a calculation of benefits or for further proceedings. As set forth below, the court finds that it is appropriate to remand the case for further administrative proceedings.

It is well established that "[i]f additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded [for further proceedings]." *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981). It is equally well established that courts are empowered to affirm, modify, or reverse a decision by the Commissioner "with or without

remanding the cause for a rehearing." 42 U.S.C. § 405(g); *see also Garrison v. Colvin*, 759 F.3d 995, 1019 (9th Cir. 2014). Generally, remand with instructions to award benefits has been considered when it is clear from the record that a claimant is entitled to benefits. *Id*.

The credit-as-true doctrine was announced in *Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396 (9th Cir. 1988) ("*Varney II*"), where it was held that when:

> [T]here are no outstanding issues that must be resolved before a proper disability determination can be made, and where it is clear from the administrative record that the ALJ would be required to award benefits if the claimant's excess pain testimony were credited, we will not remand solely to allow the ALJ to make specific findings regarding that testimony . . . [instead] we will . . . take that testimony to be established as true.

*Id*. at 1401. The doctrine promotes fairness and efficiency, given that remand for further proceedings can unduly delay income for those unable to work but entitled to benefits. *Id*. at 1398.

The credit-as-true rule has been held to also apply to medical opinion evidence, in addition to claimant testimony. *Hammock v. Bowen*, 879 F.2d 498, 503 (9th Cir. 1989). The standard for applying the rule to either is embodied in a three-part test, each part of which must be satisfied for a court to remand to an ALJ with instructions to calculate and award benefits:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Garrison*, 759 F.3d at 1020.

It should also be noted that "the required analysis centers on what the record evidence shows about the existence or non-existence of a disability." *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011). Thus, even though all conditions of the credit-as-true rule might be satisfied, remand for further proceedings would still be appropriate if an evaluation of the record as a whole creates a "serious doubt" that a claimant is, in fact, disabled. *Garrison*, 759 F.3d at 1021. On the other hand, it would be an abuse of discretion for a district court to remand a case for further proceedings where the credit-as-true rule is satisfied and the record affords no reason to believe that the claimant is not, in fact, disabled. *See id*.

1           Here, Plaintiff requests application of the credit-as-true doctrine (Pl.'s Mot. (dkt. 11) at 22-
2    23), while Defendant argues that further administrative proceedings are necessary "to allow the
3    ALJ to reevaluate the subjective symptom testimony and the medical opinion evidence." Def.'s
4    Mot. (dkt. 20) at 2. To summarize, Defendant argues that further proceedings would allow the ALJ
5    to remedy any errors in the assessment of Dr. Gupta's and Dr. De Hoyos' opinions, particularity
6    with respect to the required factors of supportability and consistency. *Id.* at 6. In any case,
7    Defendant argues that Dr. Gupta and Dr. De Hoyos did not opine on "specific functional
8    limitations," but instead only on the "severity of limitations." *Id.* According to Defendant, these
9    "qualitive statements" cannot be "translated . . . into concrete functional limitations that were
10   presented or could be presented to a vocational expert." *Id.* at 6-7. As to the opinions of the State
11   Agency medical consultants, Defendant argues that Plaintiff simply does not address why these
12   opinions should be disregarded. *Id.* at 7. Finally, Defendant argues that Plaintiff's subjective
13   complaints are insufficient—as a matter of law—to warrant the payment of benefits, and that in
14   any case Plaintiff does not identify which statements, if credited, would support a disability
15   finding. *Id.* at 8.

16          Plaintiff, on the other hand, argues that certain limitations identified in the opinions of Dr.
17   Gupta and Dr. De Hoyos necessarily support a finding of disability—notwithstanding other
18   inconsistencies between these opinions. Pl.'s Reply (dkt. 21) at 2-3. Most notably, Plaintiff
19   emphasizes that both Dr. Gupta and Dr. De Hoyos found severe limitations in Plaintiff's ability to
20   "interact with coworkers and the public, maintain regular attendance, or deal with the usual stress
21   encountered in the workplace." *Id.* at 2. Because the VE testified that being off task for ten-percent
22   (10%) of the workday would eventually preclude competitive employment, as would being absent
23   more than eight (8) times per year, Plaintiff argues that "a *severe* limitation in the ability to
24   maintain regular attendance in the workplace would unambiguously lead to a finding of
25   disability." *Id.* (emphasis in original). With respect to the State Agency medical consultants,
26   Plaintiff argues that their opinions "provided little to no analysis [in] support[] [], relied upon a
27   prior ALJ decision and were not consistent with any of the evidence." *Id.* at 4. As to her own
28   complaints, Plaintiff contends that if her testimony were credited as true she would be incapable of

7

sustaining attention to task for ninety-percent (90%) of the workday or having less than eight (8) absences per year—either of which would preclude competitive employment. *Id.* at 7.

      Defendant's argument for further administrative proceedings is persuasive. Given that several medical sources have assessed Plaintiff as having different sets of limitations, the court finds that the record has not been fully developed, and that further administrative proceedings would in fact serve a useful purpose. While Plaintiff places great weight on the consistency between the opinions of Dr. Gupta and Dr. De Hoyos with respect to maintaining attendance, there remain several areas in which these opinions differ notably. *See* Def.'s Mot. (dkt. 20) at 7 (noting discrepancies with respect to Plaintiff's ability to understand, remember, and carry out simple and repetitive tasks, as well as interact with supervisors). In any case, Plaintiff's argument with respect to her attendance-related issues cannot be supported on the current record. While Dr. Gupta and Dr. De Hoyos opined that Plaintiff was severely limited in various areas of attendance, there was no quantification as to the amount of work that Plaintiff might miss as a result. Moreover, while the VE testified generally about the number of absences that would preclude competitive employment, no specific testimony was elicited regarding Plaintiff's potential absences. As to the State Agency consultants, given the somewhat unique nature of their opinions (being based on the findings of the prior non-disability decision), the ALJ should be given an opportunity to address more specifically the factors of supportability and consistency with respect to these opinions.

      Remanding this case for further proceedings will allow the ALJ to adequately address the above-mentioned discrepancies by consulting an additional medical expert who can review the evidence and form an opinion and/or by sending questionnaire(s) to the above-mentioned medical sources to further clarify their opinions. Such procedures are necessary, given that the ALJ has effectively rejected all of the medical opinions in the record. As such, a finding of disability based on the current record is unlikely to be supported by substantial evidence—regardless of whether certain aspects of the existing opinions were credited as true. An additional medical opinion and/or further clarification of the existing opinions, as well as further administrative proceedings, are necessary to properly assess the existing opinions and, ultimately, to determine whether Plaintiff is disabled.

With respect to Plaintiff's pain and symptom testimony, the record would also benefit from further development. Plaintiff argues that her testimony, if credited as true, would necessarily support a finding of disability. Plaintiff does not, however, link specific symptoms with their attendant limitations and adequately explain how those limitations would result in a finding of disability. Instead, Plaintiff simply summarizes her testimony and states that this testimony would support a finding of disability. In any case, some of Plaintiff's testimony is potentially conflicting. For example, Plaintiff testified extensively about the debilitating effects of her symptoms, yet has traveled to El Salvador at least once and, at various times, has apparently engaged in strenuous forms of exercise. *See* AR at 45. While the ability to travel or exercise are not, of course, necessarily incompatible with disability, the undersigned finds that further inquiry into Plaintiff's subjective complaints and level of activity would be useful.

Accordingly, because the record is unclear as to the extent of Plaintiff's limitations, as well as being unclear as to whether Plaintiff is in fact disabled, the court will not apply the credit-as-true rule. Instead, the matter is remanded to the Commissioner for further proceedings.

## CONCLUSION

For the reasons stated above, the court **GRANTS** Defendant's Motion for Summary Judgment, **DENIES** Plaintiff's Motion for Summary Judgment, and **REMANDS** this matter for further proceedings consistent with this Order. The ALJ is furthered **ORDERED** to engage an additional medical expert who can review the evidence and form an opinion and/or to send questionnaire(s) to the above-mentioned medical sources to further clarify their opinions.

**IT IS SO ORDERED.**

Dated: June 13, 2023

ROBERT M. ILLMAN
United States Magistrate Judge

9